UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL A. BEATSON,

               Petitioner,

v.                                                            Case No:  2:11-cv-537-Ftm-38UAM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

               Respondents.

_____/

**OPINION AND ORDER[1]**

Michael Beatson ("Petitioner") initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 by filing a petition (Doc. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought by Petitioner should not be granted (Doc. 8).  Thereafter, Respondents filed a response in compliance with this Court's instructions and with the Rules Governing Section 2254 Cases in the United States District Courts (Doc. 9).  Petitioner filed a reply to the response (Doc. 14).

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

In his sole claim for relief, Petitioner alleges that trial counsel was ineffective for failing to have a transcript of his first suppression hearing available at Petitioner's second suppression hearing (Doc. 1 at 5).

Because this Court can "adequately assess [Petitioner's] claim without further factual development[,]" an evidentiary hearing will not be conducted. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003).  Upon due consideration of the petition, the response, the reply, and the state court record, this Court concludes that Petitioner's claim should be denied.

## I.    Background and Procedural History

On January 8, 2004, Petitioner was charged by information with two counts of aggravated assault with a firearm and one count of first degree burglary while armed (Ex. 1).[2]  Before trial, Petitioner, through counsel, filed a motion to suppress a statement Petitioner had made to police without a Miranda[3] warning and a motion to suppress a handgun seized without a search warrant (Ex. 2).

A suppression hearing was held on January 12, 2005 (Ex. 3).  The trial court granted Petitioner's motion to suppress the gun and ammunition seized without a search warrant, but reserved ruling on the motion to suppress Petitioner's statement to police in which he had indicated the location of the gun (Ex. 4).  On August 15, 2006, another suppression hearing was held, and the trial court denied Petitioner's motion to

---

[2] Unless otherwise noted, references to exhibits are to those filed by Respondents on April 2, 2012 (Doc. 11).

[3] Miranda v. Arizona, 384 U.S. 436 (1966) (statements made in response to interrogation by a defendant in police custody admissible at trial only if prosecution can show that defendant was informed of certain rights prior to questioning).

suppress his statement to the police because it was determined that Petitioner's statement had been made spontaneously (Ex. 6 at 163, 165).

After trial, the jury found Petitioner guilty of the lesser included offenses of improper exhibition of a firearm and one count of armed burglary with a firearm in violation of Florida Statute §§ 790.10 and 810.02(2)(b) (Ex. 8).   Petitioner was sentenced to time served on the first two counts, and to a mandatory minimum term of ten years in prison on the burglary charge (Ex. 8).   Petitioner appealed his convictions and sentences, and Florida's Second District Court of Appeal affirmed *per curiam* (Ex. 13); Beatson v. State, 968 So. 2d 564 (Fla. 2d DCA 2007).

On September 10, 2008, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he raised two claims of ineffective assistance of counsel (Ex. 14).   Specifically, Petitioner asserted that counsel had been ineffective for failing to conduct adequate discovery and for failing to have a transcript of the first suppression hearing available on the day of his trial, when the second suppression hearing was held.   Id.   The post-conviction court issued an order denying the first claim and ordering an evidentiary hearing on the second claim (Ex. 17).   After conducting an evidentiary hearing, the post-conviction court denied claim two of Petitioner's Rule 3.850 motion (Ex. 18; Ex. 19). Florida's Second District Court of Appeal *per curiam* affirmed on March 23, 2011.

Petitioner filed the instant habeas petition in this Court on September 23, 2011 (Doc. 1).

## II.     Governing Legal Principles

### a.     The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.   Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identified the governing legal principle, but applied it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th

Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller–El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See e.g. Miller–El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b.    Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard

of reasonableness and that the deficient performance prejudiced the defense. Id. Because both parts of the Strickland test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689. Indeed, the petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]"  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Finally, the Supreme Court has clarified that, pursuant to the AEDPA, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard."  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  Id.

### III.        Analysis

Petitioner asserts that trial counsel was ineffective for failing to have a transcript of his first suppression hearing available for his second suppression hearing (Doc. 1 at 24-25).  Specifically, Petitioner argues that one of his arresting police officers, Deputy Nyce, changed his testimony from the first to the second hearing and, had counsel been adequately prepared for the second suppression hearing, he could have impeached Deputy Nyce's testimony with the transcript. Id.  Petitioner believes that had this been done, his statement regarding the location of a firearm found in his home would have been suppressed, and the jury would have found him not guilty.

Petitioner raised this issue in his Rule 3.850 motion, and after an evidentiary hearing on the matter, the post-conviction court applied Strickland and denied the claim on the ground that counsel's performance had not been deficient.  The court determined that it was not common practice for counsel to request transcripts of suppression

hearings and that counsel had been surprised by the trial court's decision to hold the second suppression hearing on the day of the trial and would have been unable to obtain a transcript of the first suppression hearing on such short notice (Ex. 19 at 3). The post-conviction court also determined that Petitioner could not show prejudice from counsel's failure to have a transcript because, even had the location of the gun found in Petitioner's home been suppressed, there was no reasonable probability of a different outcome at Petitioner's trial:

> There was sufficient evidence introduced at trial for the jury to find Defendant guilty, even had Defendant's statement been suppressed.   Brenda Allen testified that she was awoken by Defendant entering her bedroom, wearing rubber gloves and pointing a firearm at her.   Steve Beck testified that he heard Defendant cock the hammer back on the firearm and threaten to shoot him.   There was eyewitness testimony that Defendant committed burglary in Ms. Allen's home while displaying a firearm.   Defendant has failed to meet his burden as to either prong of Strickland.   Therefore, **Ground 2 is DENIED**.

(Ex. 19 at 3-4) (emphasis in original) (internal citations to the record omitted).

Where defense counsel's failure to competently litigate a Fourth Amendment claim is the principal allegation of ineffectiveness, a petitioner must show that the claim was both meritorious and that there was a reasonable probability that the verdict at trial would have been different absent the excluded evidence.   Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).   After reviewing the record, this Court concludes that the state court's adjudication of this claim was neither contrary to Strickland or Kimmelman nor based upon an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d).

Petitioner argues that, had Officer Nyce testified consistently at his first and second suppression hearings, the trial court would have suppressed his statement as to

the location of the gun found in his home (Doc. 1 at 25).  Petitioner is correct that Officer

Nyce testified inconsistently.   At Petitioner's first suppression hearing on January 12,

2005, Officer Nyce stated that he asked Petitioner if there were any weapons in the

area, and that Petitioner responded that there was a Beretta underneath the "mattress

or pillow." (Ex. 3 at 10).   This testimony was inconsistent with Officer Nyce's prior

deposition testimony on August 6, 2004 in which he had testified that Petitioner had

volunteered the location of the Beretta without being questioned by police (Ex. 5 at 8).

At Petitioner's second suppression hearing on August 15, 2006, Officer Nyce testified,

consistently with his deposition, that Petitioner had spontaneously told him that a gun

was located underneath the mattress (Ex. 6 at 154).[4]   The trial court determined that

Petitioner had made the comment regarding the location of the gun spontaneously and

it was not the product of a custodial interrogation (Ex. 6 at 162; Ex. 11 at 7, 21).

It is unnecessary for the Court to speculate as to whether the trial court would

have suppressed Petitioner's statement as to the location of the Beretta if counsel had

challenged Deputy Nyce's statement at the second suppression hearing because

Petitioner has not satisfied the second prong of the Kimmelman test.  Specifically, in

light of the substantial evidence of Petitioner's guilt that was properly introduced at trial,

Petitioner has not demonstrated that the outcome of his trial would have differed if

counsel had successfully suppressed Petitioner's statement to police.  Kimmelman, 477

U.S. at 375.

Petitioner was convicted of the improper display of a firearm and armed burglary.

In order to prove improper display of a firearm, the State had to show that Petitioner had

---

[4] There is no dispute that Petitioner had not been apprised of his rights under Miranda
v. Arizona at the time he revealed the location of the Beretta.

a weapon in the presence of one or more persons and exhibited the weapon "in a rude, careless, angry, or threatening manner[.]" Fla. Stat. § 790.10.  In order to prove Petitioner guilty of armed burglary, the State had to prove that he had entered a dwelling with the intent to commit an offense therein and that he was, or became, armed within the dwelling.  Fla. Stat. § 810.02(2)(b).  Petitioner argues that the State "would have been hard pressed" to show that he used a weapon in the burglary without the admission of his statement to Officer Nyce regarding the Beretta's location (Doc. 14 at 17).[5]  However, a review of the trial transcript shows that two witnesses testified to Petitioner's use of a gun during the commission of the crimes.

At trial, Brenda Allen ("Allen") testified that on December 15, 2003, she was awakened by the sound of a sliding glass door in her home opening (Ex. 7 at 182).  She testified that Petitioner walked through her bedroom door with a handgun in his hand.  Id. at 183, 185.  She recognized Petitioner as her former boyfriend.  Id. at 185.  She testified that Petitioner walked to the side of her bed, pointed the gun in her face, cocked back the hammer, and asked her what she was doing.  Id. at 187.  He then told Allen that he "could put a bullet" in the head of her boyfriend, Steve Beck, who was lying beside her.  Id. at 187.  She stated that she recognized the gun Petitioner was holding as a 9 millimeter Beretta that had been at her house before.  Id. at 188.  Allen testified that she grabbed Petitioner's arm, jumped out of bed, and pushed Petitioner from the bedroom.  Id. at 189.  At that point, Petitioner told Allen that there were "three options" for that night:  he could kill her, kill both her and Steve Beck, or kill her and kill himself.  Id. at 190.  As he made the statements, he was swinging the gun in front of Allen.  Id.

_____

[5] Petitioner argues that the jury's conclusion that he had uses a gun during the burglary subjected him to a mandatory minimum ten-year sentence (Doc. 14 at 17).

Allen was eventually able to talk Petitioner into taking the loaded ammunition clip from the gun and leaving the house. Id. at 191-92.

Steve Beck testified that on the morning of December 15, 2003, he was asleep in bed with Allen when he heard her "kind of whispering." (Ex. E at 207). He heard the click of a hammer on a gun, and he heard Petitioner say that he would "just shoot him in the head." Id. at 208-210. He heard Allen and Petitioner leave the room and overheard Petitioner's ultimatum that he could shoot both Steve and Allen, just Allen or both Allen and Petitioner. Id. at 211. Steve Beck also heard Allen try and talk Petitioner into unloading the gun. Id. at 214.

Given the witness testimony that Petitioner had a gun in his hand when he entered Allen's home and threatened Allen and Beck, the post-conviction court reasonably concluded that Petitioner could not show prejudice under Strickland from the admission into evidence of his statement to Deputy Nyce. See Richtor, 131 S. Ct. at 785 (recognizing that the pivotal question under the AEDPA is whether the state court's application of the Strickland standard was unreasonable). Accordingly, Petitioner's claim is denied pursuant to 28 U.S.C. § 2254(d)(1).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV.   Certificate of Appealability

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller–El, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Michael Beatson is **DENIED,** and this case is **DISMISSED WITH PREJUDICE**.

2.  Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, this 25th day of November, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:  OrlP-4 10-29
Copies to:  All parties of record